**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-03349-PAB-NYW

ROBERT A. PFAFF

      Plaintiff,

v.

UNITED STATES OF AMERICA

      Defendant.
_____

**UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

      Robert Pfaff was convicted of tax crimes relating to his organization and sale of abusive tax shelters. The Internal Revenue Service then assessed civil penalties against Pfaff for his failure to register two abusive tax shelters with the IRS. [Compl. ¶ 8.] *See also* 26 U.S.C. §§ 6111(a), 6707. The two tax shelters are identified by their acronyms in the complaint and include FLIP/OPIS and BLIPS. [Compl. ¶ 9.] Pfaff has paid part of the penalties and seeks a refund of what he paid as well as an abatement of the remaining penalties. Because he has not satisfied the jurisdictional requirements for a refund suit, this action should be dismissed.

      The Internal Revenue Code, in effect from 1997 through 2000, required that tax shelter organizers register their tax shelters with the IRS "not later than the day on which

the first offering for sale" occurred.  26 U.S.C. § 6111(a) (1997-2000).  Code § 6707[1] imposed a penalty on all organizers who failed to register their shelter.  The penalty was the greater of 1% of the aggregate amount invested in the tax shelter or $500.   26 U.S.C. § 6707(a)(2) (1997-2000).

Here, the IRS assessed penalties against Pfaff totaling $160 million for both shelters.  [Compl. ¶ 8.]  That figure represents 1% of the aggregate amount invested in the shelters.  [*Id*.; Ex. 1, Schroder Declaration ¶ 4.]  Others who are jointly and severally liable for some of these penalties have paid approximately $97.7 million of the liabilities, leaving a total, unpaid balance of approximately $62.3 million.   [Compl ¶¶ 17, 18; *see also* Ex. 1, Schroder Declaration ¶¶ 7, 8.]  About $60.1 million of the remaining $62 million relates to the unpaid BLIPS penalty, with the remaining balance attributable to the unpaid FLIPS/OPIS penalty. [Ex. 1, Schroder Declaration ¶¶ 7-10.]

On or about April 19, 2012, Pfaff paid $228,460 towards the remaining penalty for the FLIP/OPIS tax shelter, leaving $1.6 million unpaid.   [Compl. ¶ 12; Ex. 1, Schroder Declaration ¶¶ 7-9.]  Because Pfaff has not fully paid the penalty relating to the FLIP/OPIS tax shelter, this Court does not have jurisdiction over this refund action and

---

[1] References to § 6707 in this brief are to the pre-2004 version of that statute, because that is the statute that was in effect when the conduct at issue (failure to register the tax shelter) occurred.

2

the complaint should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[2]

## FACTS AND BACKGROUND

In 2009, Robert A. Pfaff was convicted of tax crimes relating to his organization and sale of abusive tax shelters. *See United States v. Pfaff*, 989 F. Supp.2d 301, 303 (S.D.N.Y. 2013); *United States v. Pfaff*, 407 Fed. App'x 506, 508 (2d Cir. 2010); [*see also* Compl. ¶ 1.]   The superseding indictment in the criminal case identified four tax shelters, three of which are also referenced in Pfaff's complaint.  They include the Foreign Leveraged Investment Program ("FLIP"), Offshore Portfolio Investment Strategy ("OPIS"), and Bond Linked Issue Premium Structure ("BLIPS").  *Pfaff*, 989 F. Supp.2d at 303; [Compl. ¶ 9.].  In general, these shelters were designed to look like legitimate transactions, but were, in fact, unlawful devices designed to generate fictitious tax losses. *Id.*; [Ex. 1, Schroder Declaration ¶¶ 4-6.]

Although the FLIP and OPIS tax shelters were marketed at slightly different times and to different individuals, in all material respects, FLIP and OPIS were the same.  [Ex. 1, Schroder Declaration ¶ 5.]  FLIP and OPIS were both designed to generate substantial phony capital losses through an entity created in the Cayman Islands.  [*Id.*]  The IRS

---

[2] The unpaid BLIPS penalty is not at issue in this case and need not be full paid in order for this Court to have subject-matter jurisdiction over the FLIP/OPIS penalty.

describes this type of shelter as a "basis shifting" tax shelter and issued Notice 2001-45 condemning it. [*Id*.] *See also* I.R.S. Notice 2001-45, 2001-2 C.B. 129, 2001 WL 847824. Regardless of the IRS Notice, those involved in organizing FLIP and OPIS were required to register the shelter with the IRS and, in so doing, identify and describe the tax shelter and the purported benefits represented to investors. 26 U.S.C. § 6111 (1997-2000). Pfaff failed to do so.

Section 6707 (in effect prior to October 2004) authorized the IRS to assess a penalty when a person required to register a tax shelter did not do so. 26 U.S.C. §§ 6111, 6707 (1997-2000). As applicable here, the penalty was the greater of $500 or 1% of the aggregate amount invested in such tax shelter. *Id*. § 6707(a)(2). The government contends that Pfaff was required to register the FLIP/OPIS and BLIPS tax shelters, but did not do so. [Compl. ¶ 6.] As a result, on September 19, 2011, the IRS assessed penalties pursuant to 26 U.S.C. § 6707 against Pfaff. [Compl. ¶ 8. ; Ex. 1, Schroder Declaration ¶ 4.] The IRS assessed these penalties over four different tax periods (1997, 1998, 1999, and 2000). [Compl. ¶ 8; Ex. 1, Schroder Declaration ¶ 4.] The penalties collectively reflect 1% of the aggregate amount invested in the two tax shelters. [*Id*.]

Subsequently, the IRS reduced the amount owed on those penalty assessments because others who were jointly and severally liable for some of the penalties made payments towards the penalty obligations. [Compl. ¶¶ 16-17; Ex. 1, Schroder Declaration ¶¶ 7-8.] Additionally, on or about April 19, 2012, Pfaff paid $228,460

towards the penalty relating to the FLIP/OPIS tax shelter. [Compl. ¶ 12.] In doing so, he advised the IRS to apply the $228,460 to "one of the fifteen so-called OPIS transactions in 1999." [*Id.*]

The chart below outlines the amount of the original assessments, the tax shelter(s) involved, and the balance owed (exclusive of interest) after crediting Pfaff for the payment he made and the payments made by the jointly and severally liable taxpayers.

| Tax Year (Compl. ¶ 8) | Total Amount of Assessment (Compl. ¶ 8) | Tax Shelter (Compl. ¶¶ 9, 10) | Unpaid Balance of Assessments (Compl. ¶ 17)[3] |
|---|---|---|---|
| 1997 | $1,397,574 | FLIP | $252,594 |
| 1998 | $17,824,803 | FLIP/OPIS | $1,343,741 |
| 1999 | $5,522,649 | OPIS | $2,815 |
|  | $99,516,944 | BLIPS | $35,991,104 |
| 2000 | $35,970,056 | BLIPS | $24,107,871 |

[Ex. 1, Schroder Declaration ¶¶ 7-9.] In total, Pfaff still owes $1,599,150 ($252,594 +$1,343,741 +$2,815) in Code § 6707 penalties for his failure to register the FLIP/OPIS tax shelter with the IRS. [Ex. 1, Schroder Declaration ¶ 9; Compl. ¶¶ 9, 10, 17.]

---

[3] In addition to the payments made by the jointly and severally liable taxpayers and described in the complaint, the IRS has more recently received some credits and payments from other taxpayers that have not yet posted to Pfaff's account transcripts. [Ex. 1, Schroder Declaration ¶¶ 7, 8.] This chart accounts for all of the payments and credits, including those that have not yet posted to Pfaff's account transcripts. [*Id.*]

Concurrent with the $228,460 payment, Pfaff filed a Claim for Refund, which was disallowed by the IRS on or about December 12, 2012. [Compl. ¶¶ 12, 13.] He has now filed this lawsuit to (1) "recover a refund of $228,460," (2) obtain a declaratory judgment that "all remaining unpaid sums in the assessment allegedly owed . . . for the 1999 tax year be abated due to a finding that . . . [Pfaff] is not liable for the civil penalty. . ." and (3) obtain an order directing the United States "to suspend its collection efforts pending the outcome of this tax refund suit." [Compl. ¶¶ 20-22.]

## ARGUMENT

Pursuant to Rule 12(b)(1), a court must dismiss a claim when it lacks subject-matter jurisdiction. Fed. R. Civ. Proc. 12(b)(1). A Rule 12(b)(1) motion takes two general forms, including a "facial attack" and a "factual attack." *Holt v. United States*, 46 F.3d 1000, 1002-3 (10th Cir. 1995). "First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint." *Id*. at 1002. In reviewing a facial attack, a court must accept as true the allegations in the complaint. *Id*. "Second, [in a factual attack,] a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Id*. at 1003. In reviewing a factual attack, a court has "wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id*. Further, in reviewing a factual attack, a court "may not presume the truthfulness of the complaint's factual allegations." *Id*.

6

Pfaff makes three demands for relief in his complaint, including a $228,460 tax refund, a declaratory judgment that "all remaining unpaid sums in the assessment allegedly owed . . . for the 1999 tax year be abated due to a finding that . . . [Pfaff] is not liable for the civil penalty. . .," and an injunction prohibiting the United States from collecting Pfaff's unpaid tax.  [Compl. ¶¶ 20-22.]  The United States makes a "factual attack" to this Court's subject-matter jurisdiction with respect to Pfaff's tax refund action.  To that end, the government has attached the declaration of Robert Schroder.  With respect to Pfaff's declaratory judgment and injunction actions, the United States makes a "facial attack" to those causes of action and, in so doing, accepts as true the allegations in the complaint.

## I. This Court Does Not Have Subject-Matter Jurisdiction Over Pfaff's Tax Refund Suit.

The United States is a sovereign and, therefore, immune from suit unless it has expressly waived its sovereign immunity and consented to be sued.  *United States v. Mitchell*, 445 U.S. 535, 538 (1980).   Further, this Court must have subject-matter jurisdiction in order for Plaintiff to maintain this action.  Fed. R. Civ. Proc. 12(b)(1).  Plaintiff has the burden of overcoming a sovereign immunity defense and establishing this Court's subject-matter jurisdiction.  *Sydnes v. United States*, 523 F.3d 1179, 1183 (10th Cir. 2008); *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005).

Here, both subject-matter jurisdiction and the government's waiver of sovereign immunity over tax refund suits are conferred by 28 U.S.C. § 1346(a)(1).  *Wyodak Res.*

7

*Dev. Corp. v. United States*, 637 F.3d 1127, 1130 (10th Cir. 2011).  But this jurisdiction and the immunity waiver are subject to the full-payment rule, which generally requires that claimants satisfy a tax liability in full before commencing a suit for its refund.  *Flora v. United States*, 362 U.S. 145, 150 (1960); *Ardalan v. United States*, 748 F.2d 1411, 1413 (10th Cir. 1984).   If a taxpayer has not complied with the full-payment rule or met one of the exceptions to this rule, a court lacks subject-matter jurisdiction and the case must be dismissed. *Ardalan*, 748 F.2d at 1413-14.

There are only a few exceptions to the full-payment rule.  For instance, Congress has specifically authorized refund suits for less than full payment for certain penalties. 26 U.S.C. §§ 6694(c), 6703(c).  Specifically, Congress has authorized a person to bring a refund suit in the district court after paying 15% of any penalties assessed pursuant to Internal Revenue Code §§ 6694 (tax-return-preparer penalties), 6700 (tax-promoter penalties), and 6701 (more tax-return-preparer penalties).  26 U.S.C. §§ 6694(c), 6703(c). Congress has not created a specific exception for the penalties at issue here – *i.e*., § 6707 penalties.

Another exception to the full payment rule is when "a suit challeng[es] a 'divisible' tax."  *Ardalan*, 748 F.2d at 1414.   The Tenth Circuit has only recognized two types of divisible taxes as exceptions to the full-payment rule. Specifically, in the Tenth Circuit, the "[divisible tax] doctrine applies in only two situations:  (1) a suit challenging

8

unpaid excise taxes; or (2) a suit challenging a 100% penalty pursuant to 26 U.S.C. § 6672 for failure to withhold and pay over employment taxes." *Id.*

Even though the Tenth Circuit did not include tax-related penalties in its list of possible exceptions to the full payment rule, Pfaff relies, without citation, on the divisible tax exception in his complaint. Pfaff's complaint should be dismissed because § 6707 penalties are not divisible.[4]

A. <u>Divisible Taxes In General.</u>

A divisible tax "is one that represents the aggregate of taxes due on multiple transactions (*e.g*., sales of items subject to excise taxes.)" *Rocovich*, 933 F.2d at 995; *see also Fidelity Bank, N.A. v. United States*, 616 F.2d 1181, 1182 n.1 (10th Cir. 1980). For instance, § 6672 trust fund recovery penalties – assessed on persons who willfully fail to pay over income and Social Security taxes withheld from employees' wages -are divisible because the penalty is the "cumulation of separable assessments for each of the

---

[4] Unlike most taxes, § 6707 penalties are immediately assessable. *See* 26 U.S.C. §§ 6211, 6212, 6213, 6707 (statutes collectively requiring notice of deficiency, which allows taxpayer to file a Tax Court petition, in conjunction with liabilities other than § 6707 penalties). As a result, a penalized party does not have the option to petition the Tax Court. *Id*. Nonetheless, this fact does not make the penalty divisible or otherwise create an exception to the full-payment rule. *Rocovich v. United States*, 933 F.2d 991, 995 (Fed. Cir. 1991) (finding no exception to the full-payment rule for § 6166 estate tax payments); *see also Cooper v. United States*, 989 F.2d 491, 1993 WL 78893 (4th Cir. 1993) (holding *Flora* rule not limited to cases that may be pursued in U.S. Tax Court); *Curry v. United States*, 774 F.2d 852, 854 (7th Cir. 1985) (same, declining to allow "hardship" exception to full-payment rule).

12609295.1

employees involved." *Fidelity Bank*, 616 F.2d at 1182 n.1.  Suit is, therefore, permitted "after payment of one or more employee's taxes" for one tax period.  *Id*.

Code § 6700 authorizes the IRS to assess penalties against promoters of fraudulent tax schemes.  26 U.S.C. § 6700.  Over the years, and, particularly in conjunction with older versions of the statute, Courts have considered the divisibility of penalties assessed pursuant to § 6700. Although this section is not at issue here, the decisions involving the divisibility of § 6700 illuminate the difference between a divisible penalty, like § 6700, and a non-divisible penalty, like § 6707.

Under the pre–1990 version of § 6700, a person who sold an abusive tax shelter owed a "'penalty equal to the greater of $1,000 or 20 percent of the gross income derived or to be derived by such person from such activity.'" *Humphrey v. United States*, 854 F.Supp.2d 1301, (N.D. Ga. 2011) (citing 26 U.S.C. 6700(a) (1984)).  Courts were split over whether the penalty was divisible because the word "activity," as used in the statute, was arguably ambiguous.[5]  *Humphrey,* 854 F.Supp.2d at 1306.  Some courts concluded that "activity" referred to an individual transaction (*i.e*., the sale of one shelter/scheme) and others reasoned that "activity" referred to the cumulative tax transaction (*i.e*., the promotion of the entire shelter).  *Id.*;  *see, e.g., Gates v. United States,* 874 F.2d 584,

---

[5]  Congress amended the statute to clarify that "activity" refers to an individual sale. 26 U.S.C. § 6700(a) (2004).

10

586–87 (8th Cir. 1989); *Cohen v. United States,* 844 F. Supp. 758, 760–61 (S.D.Fla. 1994).

"The take away from the pre–1990 cases is that a section 6700 [penalty] was divisible when and because the word 'activity' was construed as a single sale or transaction, and nondivisible when and because 'activity' was understood as the cumulation of all sales or transactions." *Humphrey*, 854 F.Supp.2d at 1307.   As described below, unlike the potentially divisible "activity" of multiple tax-shelter sales penalized in § 6700, the § 6707 penalty is based on one activity - someone's failure to register a particular shelter.  Further, the penalty for failing to register the shelter is 1% of the aggregate amount invested in that shelter and not a particular amount for each shelter sold.

    B.   <u>Pfaff did not Pay a Divisible Portion of the Penalty.</u>

Pfaff's complaint alleges that his $228,460 paid "one of the fifteen so-called OPIS transactions in 1999." [Compl. ¶ 12.]   We expect Pfaff to argue that § 6707 penalties are divisible based on each individual participant's transaction.  But § 6707 penalties are not divisible by participant or based on a particular customer's investment.

11

A penalty under section 6707 is assessed against "a person who is required to register a tax shelter," but fails to do so. 26 U.S.C. § 6707(a)[6] (1997-2000). The amount of the penalty is the greater of $500 or 1% of the aggregate amount invested in the shelter. *Id*. Unlike the taxes courts have found to be "divisible," this penalty is calculated based on the aggregate amount of the investment in the tax shelter as a whole, and not, like § 6700, on individual sales of interests in the shelter. *Id.*

The indivisibility of this penalty is clear from its specifics. For example, § 6111 requires registration of a tax shelter on Form 8264, Application for Registration of a Tax Shelter. It does not require registration of each individual transaction, investment, or sale. 26 U.S.C. § 6111(a)(1) (1997-2000); 26 C.F.R. § 301.6111-1T, A-47 (1997-2000). Once properly registered, the shelter need not be reregistered each time an additional investment is sold. *Id*. at A-44. And while separate registrations must be completed for certain types of shelters that involve multiple parts or investments "[s]uch aggregated investments . . . are [still] *part of a single tax shelter*." *Id.* at A-21, A-22, A-48. (emphasis added).

Thus, the penalty is based on a single event – the failure to register a particular shelter - and not separate transactions (*i.e*., sales of a particular shelter) that can be broken

---

[6] Again, references to § 6707 in this brief are to the pre-2004 version of that statute, because that is the statute that was in effect when the conduct at issue (failure to register the tax shelter) occurred.

12

up into independent assessments by customer.  The IRS assessed penalties based on Pfaff's failure to register the FLIP/OPIS and BLIPS transactions.  Pfaff paid $228,460 toward a portion of the OPIS penalty from 1999, but a balance on the FLIP/OPIS penalties from tax year 1999 remains unpaid.[7]  Further, the FLIPS/OPIS penalty from the tax year 1997 and 1998 assessments are also unpaid.  As a result, even though the penalties relating to the FLIP/OPIS shelter were assessed across three tax periods (1997 - 1999), the penalty is based on a single event – the failure to register the FLIP/OPIS shelter – and Pfaff needs to full pay the approximately $1.6 million remaining in order for this Court to have jurisdiction over the complaint.  In short, Pfaff did not full pay the FLIP/OPIS penalties assessed against him and this case should be dismissed.

## II.     This Court Does Not Have Subject-Matter Jurisdiction Over Pfaff's Request for a Declaratory Judgment.

In paragraph 21 of the Complaint, Pfaff seeks a declaratory judgment that "all remaining unpaid sums in the assessment allegedly owed . . . for the 1999 tax year be abated due to a finding that . . . [Pfaff] is not liable for the civil penalty. . ." [Compl. ¶ 21.]

The Declaratory Judgment Act is codified at 28 U.S.C. § 2201 and authorizes Courts to "declare the rights and other legal relations of any interested party seeking such

---

[7] *See* Ex. 1, Schroder Declaration.

13

declaration." The Act, however, does not apply "with respect to Federal taxes." 28 U.S.C. § 2201(a). "[T]he tax exception provision of the Declaratory Judgment Act prohibits declaratory judgments in matters relating to an individual's federal taxes."[8] *Ambort v. United States*, 392 F.3d 1138, 1140 (10th Cir. 2004). Thus, this Court does not have subject-matter jurisdiction to issue a declaratory judgment regarding Pfaff's unpaid penalties. *Ambort*, 392 F.3d at 1140-41 (finding court lacked subject-matter jurisdiction due to tax exception to Declaratory Judgment Act and Anti-Injunction Act). Pfaff's declaratory judgment claim should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### III. This Court Does Not Have Subject-Matter Jurisdiction Over Pfaff's Request for Injunctive Relief.

In paragraph 22 of the Complaint, Pfaff seeks an injunction order directing the United States "to suspend its collection efforts pending the outcome of this tax refund suit." [Compl. ¶ 22.]

Subject to exceptions not relevant here, the Anti-Injunction Act codifies the United States' sovereign immunity and provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any

---

[8] The word "taxes" includes penalties. *See Evans v. I.R.S.*, 539 F. Supp. 805, 806 (E.D. Mich. 1982) (holding Declaratory Judgment Act barred declaratory judgment relating to promoter penalties under 26 U.S.C. § 6694(a)).

person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). *See Bob Jones Univ. v. Simon*, 416 U.S. 725, 736 (1974); *Judicial Watch, Inc. v. Rossotti*, 317 F.3d 401, 405 (4th Cir. 2003) (noting "courts lack jurisdiction to issue injunctive relief in suits seeking to restrain the assessment or collection of taxes"). This statute, therefore, precludes Pfaff's request to obtain an order restraining the government's collection of tax.[9] *Id.*; *Marvel v. United States*, 548 F.2d 295, 299-300 (10th Cir. 1977). Thus, Pfaff's claim for injunctive relief should be dismissed for lack of subject-matter jurisdiction. *Rael v. Apodaca*, 210 Fed. Appx. 787, 790 (10th Cir. 2006) ("As we have recognized, if a taxpayer files a claim in a federal district court that falls within the ambit of the Anti-Injunction Act and no exception applies, the court must dismiss the claim for lack of subject matter jurisdiction.").

---

[9] Although the Anti-injunction Act refers to suits seeking to enjoin "tax" collection, as opposed to "penalty" collection, the Internal Revenue Code defines "tax" in this statute to include penalties. 26 U.S.C. §§ 6671(a), 6707.

12609295.1

## **CONCLUSION**

For the reasons described above, the United States respectfully requests that this Court dismiss Pfaff's complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Dated:  April 10, 2015                              CAROLINE D. CIRAOLO
                                                    Acting Assistant Attorney General
                                                    Tax Division

                                                    s/ Hilarie Snyder
                                                    _____
                                                    HILARIE SNYDER
                                                    United States Department of Justice
                                                    Tax Division
                                                    P.O. Box 7238
                                                    Ben Franklin Station
                                                    Washington, DC 20044
                                                    202-307-2708 (t)
                                                    202-514-6770 (f)
                                                    hilarie.e.snyder@usdoj.gov


                                        Of Counsel:   JOHN F. WALSH
                                                      United States Attorney

12609295.1

## CERTIFICATE OF SERVICE

  I hereby certify on this 10th day of April, 2015, that I filed a copy of this Memorandum in Support with the Court's Electronic Filing System, which sent a notice of electronic filing to all registered parties, including Ted H. Merriam and Kevin A. Planegger, counsel for Plaintiff, Robert A. Pfaff.

s/ Hilarie Snyder
_____
Hilarie Snyder

12609295.1