**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-03349-PAB-NYW

ROBERT A. PFAFF

 Plaintiff,
v.

UNITED STATES OF AMERICA

 Defendant.

___

**UNITED STATES' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

 Robert Pfaff was convicted of tax crimes relating to his organization and sale of abusive tax shelters. The Internal Revenue Service then assessed civil penalties against Pfaff for his failure to register two abusive tax shelters with the IRS. [Compl. ¶ 8.] *See also* 26 U.S.C. §§ 6111(a), 6707. The two tax shelters are identified by their acronyms in the complaint and include FLIP/OPIS and BLIPS. [Compl. ¶ 9.] Pfaff paid only part of the penalties but seeks a refund of what he paid as well as an abatement of the remaining penalties. Because he has not full paid either penalty, he has not satisfied the jurisdictional requirements for a refund suit and this action should be dismissed.

 The Internal Revenue Code, in effect from 1997 through 2000, required that tax shelter organizers register their tax shelters with the IRS "not later than the day on which the first

1

offering for sale" occurred.  26 U.S.C. § 6111(a) (1997-2000).  Code § 6707[1] imposed a penalty on all organizers who failed to register their shelter.  The penalty was the greater of 1% of the aggregate amount invested in the tax shelter or $500.   26 U.S.C. § 6707(a)(2) (1997-2000).

Here, the IRS assessed penalties against Pfaff totaling $160 million for failing to register both FLIP/OPIS and BLIPS.  [Compl. ¶ 8.]  That figure represents 1% of the aggregate amount invested in the shelters.  [*Id*.; Ex. 1, Schroder Dec. ¶ 4.]  Others who are jointly and severally liable for some of these penalties have paid approximately $97.7 million of the penalties, leaving a total, unpaid balance of approximately $62.3 million.   [Compl ¶¶ 17, 18; *see also* Ex. 1, Schroder Dec. ¶¶ 7, 8.]  About $60.1 million of the $62 million balance relates to the BLIPS penalty.  [Ex. 1, Schroder Dec. ¶¶ 7-10.]  The remaining balance relates to the FLIPS/OPIS penalty.  [*Id*.]

On or about April 19, 2012, Pfaff paid $228,460 towards the penalty for failing to register the FLIP/OPIS tax shelter and requested a refund.  [Compl. ¶ 12; Ex. 1, Schroder Dec. ¶¶ 7-9.]  $1.6 million remains unpaid.  [Ex. 1, Schroder Dec. ¶¶ 7-9.] Because Pfaff has not fully paid the penalty relating to the FLIP/OPIS tax shelter, this Court lacks jurisdiction over this refund action and the complaint should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[2]

---

[1] References to § 6707 in this brief are to the pre-2004 version of that statute, because that is the statute that was in effect when the conduct at issue (failure to register the tax shelter) occurred.

[2] The unpaid BLIPS penalty need not be full paid in order for this Court to have subject-matter jurisdiction over a tax refund action involving the FLIP/OPIS penalty, but because the BLIPS penalty also is unpaid, this court lacks jurisdiction over any refund request regarding it.

**FACTS AND BACKGROUND**

In 2009, Robert A. Pfaff was convicted of tax crimes relating to his organization and sale of abusive tax shelters. *See United States v. Pfaff*, 989 F. Supp.2d 301, 303 (S.D.N.Y. 2013); *United States v. Pfaff*, 407 Fed. App'x 506, 508 (2d Cir. 2010); [*see also* Compl. ¶ 1.]   The superseding indictment in the criminal case identified four tax shelters, three of which are also referenced in Pfaff's complaint.  They include the Foreign Leveraged Investment Program ("FLIP"), Offshore Portfolio Investment Strategy ("OPIS"), and Bond Linked Issue Premium Structure ("BLIPS").  *Pfaff*, 989 F. Supp.2d at 303; [Compl. ¶ 9.].  In general, these shelters were designed to look like legitimate transactions, but were, in fact, unlawful devices designed to generate fictitious tax losses.  *Id.*; [Ex. 1, Schroder Dec. ¶¶ 4-6.]

Although the FLIP and OPIS tax shelters were marketed at slightly different times and to different individuals, in all material respects, FLIP and OPIS were the same.  [Ex. 1, Schroder Dec. ¶ 5.]  FLIP and OPIS were both designed to generate substantial phony capital losses through an entity created in the Cayman Islands.  [*Id.*]  The IRS describes this type of shelter as a "basis shifting" tax shelter and issued Notice 2001-45 condemning it.  [*Id.*]  *See also* I.R.S. Notice 2001-45, 2001-2 C.B. 129, 2001 WL 847824.  Regardless of the IRS Notice, those involved in organizing FLIP and OPIS were required to register the shelter with the IRS and, in so doing, identify and describe the tax shelter and the purported benefits represented to investors. 26 U.S.C. § 6111 (1997-2000).  Pfaff failed to do so.

Section 6707 (in effect prior to October 2004) authorized the IRS to assess a penalty when a person required to register a tax shelter did not do so.  26 U.S.C. §§ 6111, 6707 (1997-2000).  As applicable here, the penalty was the greater of $500 or 1% of the aggregate amount

3

12619248.1

invested in such tax shelter. *Id*. § 6707(a)(2). The government contends that Pfaff failed to register the FLIP/OPIS and BLIPS tax shelters. [Compl. ¶ 6.] As a result, on September 19, 2011, the IRS assessed penalties pursuant to 26 U.S.C. § 6707 against Pfaff. [Compl. ¶ 8. ; Ex. 1, Schroder Dec. ¶ 4.] The IRS assessed these penalties over four different tax periods (1997, 1998, 1999, and 2000). [Compl. ¶ 8; Ex. 1, Schroder Dec. ¶ 4.] The penalties collectively reflect 1% of the aggregate amount invested in the two tax shelters. [*Id*.]

Subsequently, the IRS reduced the amount owed on those penalty assessments because others who were jointly and severally liable for some of the penalties made payments towards those liabilities. [Compl. ¶¶ 16-17; Ex. 1, Schroder Dec. ¶¶ 7-8.] Additionally, on or about April 19, 2012, Pfaff paid $228,460 towards the penalty relating to his failure to register the FLIP/OPIS tax shelter. [Compl. ¶ 12.] In doing so, he advised the IRS to apply the $228,460 to "one of the fifteen so-called OPIS transactions in 1999." [*Id*.]

The chart below outlines the amount of the original assessments, the tax shelter(s) involved, and the balance owed (exclusive of interest) after crediting Pfaff for the payment he made and the payments made by the jointly and severally liable taxpayers.

| Tax Year (Compl. ¶ 8) | Total Amount of Assessment (Compl. ¶ 8) | Tax Shelter (Compl. ¶¶ 9, 10) | Unpaid Balance of Assessments (Compl. ¶ 17)[3] |
|---|---|---|---|
| 1997 | $1,397,574 | FLIP | $252,594 |

---

[3] In addition to the payments made by the jointly and severally liable taxpayers and described in the complaint, the IRS has more recently received some credits and payments from other taxpayers that have not yet posted to Pfaff's account transcripts. [Ex. 1, Schroder Dec. ¶¶ 7, 8.] This chart accounts for all of the payments and credits, including those that have not yet posted to Pfaff's account transcripts. [*Id*.]

4

| 1998 | $17,824,803 | FLIP/OPIS | $1,343,741 |
|------|-------------|-----------|------------|
| 1999 | $5,522,649  | OPIS      | $2,815     |
|      | $99,516,944 | BLIPS     | $35,991,104 |
| 2000 | $35,970,056 | BLIPS     | $24,107,871 |

[Ex. 1, Schroder Dec. ¶¶ 7-9.] In total, Pfaff still owes $1,599,150 ($252,594 +$1,343,741 +$2,815) in Code § 6707 penalties for his failure to register the FLIP/OPIS tax shelter with the IRS. [Ex. 1, Schroder Dec. ¶ 9; Compl. ¶¶ 9, 10, 17.]

Concurrent with the $228,460 payment, Pfaff filed a Claim for Refund, which the IRS disallowed on or about December 12, 2012. [Compl. ¶¶ 12, 13.] He has now filed this lawsuit to (1) "recover a refund of $228,460," (2) obtain a declaratory judgment that "all remaining unpaid sums in the assessment allegedly owed . . . for the 1999 tax year be abated due to a finding that . . . [Pfaff] is not liable for the civil penalty. . ." and (3) obtain an order directing the United States "to suspend its collection efforts pending the outcome of this tax refund suit." [Compl. ¶¶ 20-22.]

## ARGUMENT

Pursuant to Rule 12(b)(1), a court must dismiss a claim when it lacks subject-matter jurisdiction. Fed. R. Civ. Proc. 12(b)(1). A Rule 12(b)(1) motion takes two general forms, including a "facial attack" and a "factual attack." *Holt v. United States*, 46 F.3d 1000, 1002-3 (10th Cir. 1995). "First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint." *Id*. at 1002. In reviewing a facial attack, a court must accept as true the allegations in the complaint. *Id*. "Second, [in a factual attack,] a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends." *Id*. at 1003. In reviewing a factual attack, a court has

5

"wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id*. Further, in reviewing a factual attack, a court "may not presume the truthfulness of the complaint's factual allegations." *Id*. A "factual attack" does not convert a motion to dismiss into a motion for summary judgment, as long as (like here) resolution of the jurisdictional question is not intertwined in the merits of the case. *Id*.

Pfaff makes three demands for relief in his complaint, including a $228,460 tax refund, a declaratory judgment that "all remaining unpaid sums in the assessment allegedly owed . . . for the 1999 tax year be abated due to a finding that . . . [Pfaff] is not liable for the civil penalty. . .," and an injunction prohibiting the United States from collecting Pfaff's unpaid tax. [Compl. ¶¶ 20-22.] The United States makes a "factual attack" to this Court's subject-matter jurisdiction with respect to Pfaff's tax refund action, <u>as Pfaff has not (and cannot) allege that he has full paid the FLIP/OPIS penalty assessed against him</u>.[4] To that end, the government has attached the declaration of Robert Schroder. With respect to Pfaff's declaratory judgment and injunction actions, the United States makes a "facial attack" to those causes of action and, in so doing, accepts as true the allegations in the complaint. As described more below, the Declaratory Judgment Act and the Anti-Injunction Act prohibit these types of actions, so, in this circumstance, <u>there are no additional allegations that the movant could add to the complaint to vest jurisdiction in this Court</u>.[5]

---

[4] *See* Practice Standards III.F.2.a.i ("For each claim for relief that the movant seeks to have dismissed, clearly enumerate each element that movant contends must be alleged, but was not.")

[5] *See* Ftn. 4.

6

I.      **This Court Lacks Subject-Matter Jurisdiction Over Pfaff's Tax Refund Suit.**

The United States is immune from suit unless it has expressly waived its sovereign immunity and consented to be sued. *United States v. Mitchell*, 445 U.S. 535, 538 (1980). Further, this Court must have subject-matter jurisdiction in order for Plaintiff to maintain this action. Fed. R. Civ. Proc. 12(b)(1). Plaintiff has the burden of overcoming a sovereign immunity defense and establishing this Court's subject-matter jurisdiction. *Sydnes v. United States*, 523 F.3d 1179, 1183 (10th Cir. 2008); *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005).

Here, both subject-matter jurisdiction and the government's waiver of sovereign immunity over tax refund suits are conferred by 28 U.S.C. § 1346(a)(1). *Wyodak Res. Dev. Corp. v. United States*, 637 F.3d 1127, 1130 (10th Cir. 2011). But this jurisdiction and the immunity waiver are subject to the full-payment rule, which generally requires that claimants satisfy a tax liability in full before commencing a suit for its refund. *Flora v. United States*, 362 U.S. 145, 150 (1960); *Ardalan v. United States*, 748 F.2d 1411, 1413 (10th Cir. 1984). If a taxpayer has not complied with the full-payment rule or met one of the exceptions to this rule, a court lacks subject-matter jurisdiction and the case must be dismissed. *Ardalan*, 748 F.2d at 1413-14.

There are only a few exceptions to the full-payment rule. For instance, Congress has specifically authorized refund suits for less than full payment for certain penalties. 26 U.S.C. §§ 6694(c), 6703(c). Specifically, Congress has authorized a person to bring a refund suit in the district court after paying 15% of any penalties assessed pursuant to Internal Revenue Code §§ 6694 (tax-return-preparer penalties), 6700 (tax-promoter penalties), and 6701 (more tax-return-

7

preparer penalties). 26 U.S.C. §§ 6694(c), 6703(c). Congress has not created a specific exception for the penalties at issue here – *i.e.*, § 6707 penalties.

Another exception to the full payment rule is when "a suit challeng[es] a 'divisible' tax." *Ardalan*, 748 F.2d at 1414. The Tenth Circuit has only recognized two types of divisible taxes as exceptions to the full-payment rule. Specifically, in the Tenth Circuit, the "[divisible tax] doctrine applies in only two situations: (1) a suit challenging unpaid excise taxes; or (2) a suit challenging a 100% penalty pursuant to 26 U.S.C. § 6672 for failure to withhold and pay over employment taxes." *Id.*

Even though the Tenth Circuit did not include tax-related penalties in its list of possible exceptions to the full payment rule, Pfaff relies, without citation, on the divisible tax exception in his complaint. Pfaff's complaint should be dismissed because § 6707 penalties are not divisible.[6]

A. <u>Divisible Taxes In General.</u>

A divisible tax "is one that represents the aggregate of taxes due on multiple transactions (*e.g.*, sales of items subject to excise taxes.)" *Rocovich*, 933 F.2d at 995; *see also Fidelity Bank,*

---

[6] Unlike most taxes, § 6707 penalties are immediately assessable. *See* 26 U.S.C. §§ 6211, 6212, 6213, 6707 (statutes collectively requiring notice of deficiency, which allows taxpayer to file a Tax Court petition, in conjunction with liabilities other than § 6707 penalties). As a result, a penalized party does not have the option to petition the Tax Court. *Id.* Nonetheless, this fact does not make the penalty divisible or otherwise create an exception to the full-payment rule. *Rocovich v. United States*, 933 F.2d 991, 995 (Fed. Cir. 1991) (finding no exception to the full-payment rule for § 6166 estate tax payments); *see also Cooper v. United States*, 989 F.2d 491, 1993 WL 78893 (4th Cir. 1993) (holding *Flora* rule not limited to cases that may be pursued in U.S. Tax Court; *Curry v. United States*, 774 F.2d 852, 854 (7th Cir. 1985) (same, declining to allow "hardship" exception to full-payment rule).

*N.A. v. United States*, 616 F.2d 1181, 1182 n.1 (10th Cir. 1980). For instance, § 6672 trust fund recovery penalties – assessed on persons who willfully fail to pay over income and Social Security taxes withheld from employees' wages -are divisible because the penalty is the "cumulation of separable assessments for each of the employees involved." *Fidelity Bank*, 616 F.2d at 1182 n.1. Suit is, therefore, permitted "after payment of one or more employee's taxes" for one tax period. *Id.*

Code § 6700 authorizes the IRS to assess penalties against promoters of fraudulent tax schemes. 26 U.S.C. § 6700. Over the years, and, particularly in conjunction with older versions of the statute, Courts have considered the divisibility of penalties assessed pursuant to § 6700. Although this section is not at issue here, the decisions involving the divisibility of § 6700 illuminate the difference between a divisible penalty, like § 6700, and a non-divisible penalty, like § 6707.

Under the pre–1990 version of § 6700, a person who sold an abusive tax shelter owed a "'penalty equal to the greater of $1,000 or 20 percent of the gross income derived or to be derived by such person from such activity.'" *Humphrey v. United States*, 854 F.Supp.2d 1301, (N.D. Ga. 2011) (citing 26 U.S.C. 6700(a) (1984)). Courts were split over whether the penalty was divisible because the word "activity," as used in the statute, was arguably ambiguous.[7] *Humphrey,* 854 F.Supp.2d at 1306. Some courts concluded that "activity" referred to an individual transaction (*i.e*., the sale of one shelter/scheme) and others reasoned that "activity"

---

[7] Congress amended the statute to clarify that "activity" refers to an individual sale. 26 U.S.C. § 6700(a) (2004).

9

referred to the cumulative tax transaction (*i.e.*, the promotion of the entire shelter). *Id.*; *see, e.g., Gates v. United States,* 874 F.2d 584, 586–87 (8th Cir. 1989); *Cohen v. United States,* 844 F. Supp. 758, 760–61 (S.D.Fla. 1994).

"The take away from the pre–1990 cases is that a section 6700 [penalty] was divisible when and because the word 'activity' was construed as a single sale or transaction, and nondivisible when and because 'activity' was understood as the cumulation of all sales or transactions." *Humphrey*, 854 F.Supp.2d at 1307.  As described below, unlike the potentially divisible "activity" of multiple tax-shelter sales penalized in § 6700, the § 6707 penalty is based on one activity - someone's failure to register a particular shelter.  Further, the penalty for failing to register the shelter is 1% of the aggregate amount invested in that shelter and not a particular amount for each shelter sold.

B.   Section 6707 Penalties Are Not Divisible.

Pfaff's complaint alleges that his $228,460 paid "one of the fifteen so-called OPIS transactions in 1999." [Compl. ¶ 12.]   We expect Pfaff to argue that § 6707 penalties are divisible based on each individual participant's transaction.  But § 6707 penalties are not divisible by participant or based on a particular customer's investment.

A penalty under section 6707 is assessed against "a person who is required to register a tax shelter," but fails to do so.  26 U.S.C. § 6707(a)[8] (1997-2000).   The amount of the penalty is

---

[8] Again, references to § 6707 in this brief are to the pre-2004 version of that statute, because that is the statute that was in effect when the conduct at issue (failure to register the tax shelter) occurred.

10

the greater of $500 or 1% of the aggregate amount invested in the shelter. *Id*. Unlike the taxes courts have found to be "divisible," this penalty is calculated based on the aggregate amount of the investment in the tax shelter as a whole, and not, like § 6700, on individual sales of interests in the shelter. *Id.*

The indivisibility of this penalty is clear from its specifics. For example, § 6111 requires registration of a tax shelter on Form 8264, Application for Registration of a Tax Shelter. It does not require registration of each individual transaction, investment, or sale. 26 U.S.C. § 6111(a)(1) (1997-2000); 26 C.F.R. § 301.6111-1T, A-47 (1997-2000). Once properly registered, the shelter need not be reregistered each time an additional investment is sold. *Id*. at A-44. And while separate registrations must be completed for certain types of shelters that involve multiple parts or investments "[s]uch aggregated investments . . . are [still] *part of a single tax shelter*." *Id.* at A-21, A-22, A-48. (emphasis added).

Thus, the penalty is based on a single event – the failure to register a particular shelter - and not separate transactions (*i.e*., sales of a particular shelter) that can be broken up into independent assessments by customer. The IRS assessed penalties based on Pfaff's failure to register the FLIP/OPIS and BLIPS transactions. Pfaff paid $228,460 toward a portion of the OPIS penalty from 1999, but a balance on the FLIP/OPIS penalty from tax year 1999 remains unpaid.[9] Further, the FLIPS/OPIS penalty from the tax year 1997 and 1998 assessments are also unpaid. As a result, even though the penalty relating to the FLIP/OPIS shelter were assessed

---

[9] *See* Ex. 1, Schroder Declaration.

11

across three tax periods (1997 - 1999), the penalty is based on a single event – the failure to register the FLIP/OPIS shelter – and Pfaff needs to full pay the approximately $1.6 million remaining in order for this Court to have jurisdiction over the complaint.  In short, Pfaff did not full pay the FLIP/OPIS penalty assessed against him and this case should be dismissed.

## II.  This Court Lacks Subject-Matter Jurisdiction Over Pfaff's Request for a Declaratory Judgment.

In paragraph 21 of the Complaint, Pfaff seeks a declaratory judgment that "all remaining unpaid sums in the assessment allegedly owed . . . for the 1999 tax year be abated due to a finding that . . . [Pfaff] is not liable for the civil penalty. . ." [Compl. ¶ 21.]

The Declaratory Judgment Act is codified at 28 U.S.C. § 2201 and authorizes Courts to "declare the rights and other legal relations of any interested party seeking such declaration." The Act, however, does not apply "with respect to Federal taxes."  28 U.S.C. § 2201(a).  "[T]he tax exception provision of the Declaratory Judgment Act prohibits declaratory judgments in matters relating to an individual's federal taxes."[10]  *Ambort v. United States*, 392 F.3d 1138, 1140 (10th Cir. 2004).  Thus, this Court does not have subject-matter jurisdiction to issue a declaratory judgment regarding Pfaff's unpaid penalties.  *Ambort*, 392 F.3d at 1140-41 (finding court lacked subject-matter jurisdiction due to tax exception to Declaratory Judgment Act and Anti-Injunction Act).  Pfaff's declaratory judgment claim should be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

---

[10] The word "taxes" includes penalties.  *See Evans v. I.R.S.*, 539 F. Supp. 805, 806 (E.D. Mich. 1982) (holding Declaratory Judgment Act barred declaratory judgment relating to promoter penalties under 26 U.S.C. § 6694(a)).

12

### III. This Court Lacks Subject-Matter Jurisdiction Over Pfaff's Request for Injunctive Relief.

In paragraph 22 of the Complaint, Pfaff seeks an injunction order directing the United States "to suspend its collection efforts pending the outcome of this tax refund suit." [Compl. ¶ 22.]

Subject to exceptions not relevant here, the Anti-Injunction Act codifies the United States' sovereign immunity and provides that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." 26 U.S.C. § 7421(a). *See Bob Jones Univ. v. Simon*, 416 U.S. 725, 736 (1974); *Judicial Watch, Inc. v. Rossotti*, 317 F.3d 401, 405 (4th Cir. 2003) (noting "courts lack jurisdiction to issue injunctive relief in suits seeking to restrain the assessment or collection of taxes"). This statute protects "the Government's need to assess and collect taxes as expeditiously as possible with a minimum of preenforcement judicial interference." *Bob Jones*, 416 U.S. at 736. It, therefore, precludes Pfaff's request to obtain an order restraining the government's collection of tax.[11] *Id.*; *Marvel v. United States*, 548 F.2d 295, 299-300 (10th Cir. 1977). Pfaff's claim for injunctive relief should be dismissed for lack of subject-matter jurisdiction. *Rael v. Apodaca*, 210 Fed. Appx. 787, 790 (10th Cir. 2006) ("As we have recognized, if a taxpayer files a claim in a federal district court

---

[11] Although the Anti-injunction Act refers to suits seeking to enjoin "tax" collection, as opposed to "penalty" collection, the Internal Revenue Code defines "tax" in this statute to include penalties. 26 U.S.C. §§ 6671(a), 6707.

13

that falls within the ambit of the Anti-Injunction Act and no exception applies, the court must dismiss the claim for lack of subject matter jurisdiction.").

## CONCLUSION

For the reasons described above, the United States respectfully requests that this Court dismiss Pfaff's complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Respectfully submitted,

Dated:  April 15, 2015

CAROLINE D. CIRAOLO
Acting Assistant Attorney General
Tax Division

s/ Hilarie Snyder
_____
HILARIE SNYDER
United States Department of Justice
Tax Division
P.O. Box 7238
Ben Franklin Station
Washington, DC 20044
202-307-2708 (t)
202-514-6770 (f)
hilarie.e.snyder@usdoj.gov

Of Counsel:   JOHN F. WALSH
United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify on this 15th day of April, 2015, that I filed a copy of this Memorandum in Support with the Court's Electronic Filing System, which sent a notice of electronic filing to all registered parties, including Ted H. Merriam, counsel for Plaintiff, Robert A. Pfaff.

s/ Hilarie Snyder
_____
Hilarie Snyder

14

12619248.1