# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03349-PAB-NYW

ROBERT A. PFAFF

    Plaintiff,

v.

UNITED STATES OF AMERICA

    Defendant.

_____

## DECLARATION OF ROBERT K. SCHRODER

1.    I am a Tax Shelter Promoter Compliance Specialist with the Large Business & International division of Internal Revenue Service. I have been a Tax Shelter Promoter Compliance Specialist since 2004 and before that was a Revenue Agent. I have worked for the IRS since 1974. My job responsibilities as a Tax Shelter Promoter Compliance Specialist include assisting tax shelter promoter examination teams in virtually every aspect of their investigations.

2.    Prior to October 2004, Internal Revenue Code § 6707(a)(1) authorized the IRS to assess penalties against individuals and entities that failed to register tax shelters as required by Internal Revenue Code § 6111(a).

1

**Exhibit 1**

12612010.1

3.      I coordinated the Robert Pfaff penalty examination at the IRS.  In that capacity, I worked with the assigned examination team in identifying abusive transactions and in reviewing pertinent documents.  I also participated in (1) the preparation of the audit examination report, (2) the computation of the penalty, (3) discussions with Mr. Pfaff's authorized representative, and (4) the identification of penalty payments made by jointly and severally liable taxpayers.  I have personal knowledge of the facts in this declaration based on my work in coordinating the Robert Pfaff penalty examination and my review of the IRS's records.

4.      On September 19, 2011, the IRS assessed Code § 6707 penalties against Robert Pfaff for his failure to register two shelters with the IRS.  The Code § 6707 penalties totaled 1% of the aggregate amount invested in the tax shelters.  The IRS assessed these penalties over four different tax periods (1997, 1998, 1999, and 2000). The first shelter was called the Foreign Leveraged Investment Program ("FLIP") or the Offshore Portfolio Investment Strategy ("OPIS").  The second tax shelter was called the Bond Linked Issue Premium Structure ("BLIPS").  These tax shelters were designed to look like legitimate transactions, but were, in fact, unlawful devices designed to generate tax losses.

5.      Although the FLIP and OPIS transactions were marketed at slightly different times and to different individuals, in all material respects, FLIP and OPIS were the same.  FLIP and OPIS were designed to generate substantial phony capital losses

using an entity created in the Cayman Islands. The IRS describes this type of shelter as a "basis shifting" tax shelter and issued Notice 2001-45 condemning it. (IRS Notice 2001-45, 2001-2 C.B. 129, 2001 WL 847824).

6. The BLIPS shelter was designed to generate "paper" capital and ordinary losses through a series of pre-arranged transactions that involved the client purportedly borrowing money from one of four banks. The IRS describes this type of shelter as an improper "tax avoidance using artificially high basis" shelter and issued Notice 2000-44 condemning it. (IRS Notice 2000-44, 2000-2 C.B. 255, 2000 WL 1138430.)

7. After the penalty assessments made in 2011, the IRS reduced the amount owed by Pfaff on the § 6707 penalty assessments because other taxpayers, who were jointly and severally liable for some of the penalties with Pfaff, made payments towards their joint obligations. These adjustments are reflected on Pfaff's account transcripts and resulted in an approximate $92 million credit to Pfaff. Additionally, recently, the IRS has received some payments and credits from other taxpayers jointly and severally liable for some of the penalties with Pfaff. These newer payments and credits have not yet been posted to Pfaff's accounts, but they are accounted for in the chart in paragraph 8 below. The recent adjustments include a $52,039 credit for the FLIP/OPIS penalty from tax year 1998, as well as a total $5,682,735 payment towards the BLIPS assessments from 1999 and 2000.

8.      The chart below outlines the amount of the original assessments, the tax shelter(s) involved, and the balance owed (exclusive of interest and miscellaneous collection fees) after crediting Pfaff for the payments he made and the payments made by the jointly and severally liable taxpayers.

| Tax Year | Total Amount of Assessment | Tax Shelter | Unpaid Balance of Assessments |
|---|---|---|---|
| 1997 | $1,397,574 | FLIP | $252,594 |
| 1998 | $17,824,803 | FLIP/OPIS | $1,343,741 |
| 1999 | $5,522,649 | OPIS | $2,815 |
|  | $99,516,944 | BLIPS | $35,991,104 |
| 2000 | $35,970,056 | BLIPS | $24,107,871 |

9.      In total, Pfaff still owes $1,599,150 ($252,594 + $1,343,741 + $2,815) in Code § 6707 penalties for his failure to register the FLIP/OPIS tax shelter with the IRS.

4

12612010.1

10. In total, Pfaff still owes $60,098,975 ($35,991,104 + $24,107,871) in Code § 6707 penalties for his failure to register the BLIPS tax shelter with the IRS.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 10th day of April, 2015

      /s/ Robert K. Schroder
Robert K. Schroder