IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03349-PAB-NYW

ROBERT A. PFAFF,

    Plaintiff,

vs.

UNITED STATES OF AMERICA,

    Defendant.

---

PLAINTIFF'S RESPONSE TO UNITED STATES' MOTION TO DISMISS

---

The Plaintiff, through undersigned counsel, objects and responds to the United States' Motion to Dismiss (CM-ECF #18) as follows:

## I. INTRODUCTION

The United States assessed a civil penalty pursuant to 26 U.S.C. 6707 against Robert Pfaff on September 11, 2011 in the amount of $160,232,026. In order to hold Mr. Pfaff liable for the penalty and inflate the amount of the assessment, the United States has taken inconsistent positions in interpreting the statutory language and in applying the statute to the relevant facts in this case. Now, the United States argues that full payment of the disputed penalty[1] is necessary to confer jurisdiction on this Court, effectively denying Mr. Pfaff any opportunity to challenge a penalty that has been assessed on dubious and disputed grounds. In fact, the civil penalty at issue in this case is a so-called divisible penalty such that full payment is not necessary to confer jurisdiction on this Court. Furthermore, if denied the possibility of any post-assessment judicial

---

[1] The penalty was subsequently reduced to $67,661,359 on or about December 12, 2012.

review (by requiring full payment of a multi-million dollar assessment), Mr. Pfaff would be deprived of his property without due process of law, in violation of the Fifth Amendment to the United States Constitution.

Additionally, the United States has already collected approximately $300,000,000 from other taxpayers, who were jointly and severally liable for some of the same penalties with Mr. Pfaff. Mr. Pfaff contends, as set forth in the administrative refund claim incorporated into his Complaint, that the civil penalty assessed against him has now been paid in full as a result of these other payments. Assuming that the civil penalty is paid in full, the divisibility issue would be moot. The United States provides the Declaration of Robert Schroeder that the IRS has reduced the assessments against Mr. Pfaff based on these other payments, but offers no verification or proof that such reductions are accurate and/or based on a reasonable allocation method. At a minimum, some preliminary discovery and an evidentiary hearing are necessary to determine whether the civil penalty assessment against Mr. Pfaff remains unpaid.

## II. STANDARD OF REVIEW

Given that federal district court are courts of limited jurisdiction, the purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has jurisdiction to properly hear and adjudicate the case. Montoya v. Chao, 296 F.3d 952 (10th Cir. 2002); Fed. R. Civ. P. 12(b)(1). A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: facial attack or factual attack. Holt v. United States, 46 F.3d 1000 (10th Cir. 1995). When reviewing a facial attack on a complaint, the Court accepts the allegations of the complaint as true. Id. On the other hand, when reviewing a factual attack on a complaint, the Court "may not presume the truthfulness of the complaint's factual allegations." Id. With a factual attack, the moving party

challenges the facts in the complaint that set forth the basis for the Court's subject-matter jurisdiction. Id. Therefore, the Court must make its own findings regarding disputed jurisdictional facts, and in order to make such findings, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing." Id. (citing Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990); Wheeler v. Hurdman, 825 F.2d 257 (10th Cir. 1987)).

### III. ARGUMENT

A. The Court has subject matter jurisdiction in this case because the so-called promoter penalty assessed against the Plaintiff pursuant to 26 U.S.C. § 6707 is a so-called divisible tax and the Plaintiff has made a payment (and corresponding refund claim) in an amount attributable to the penalty for a single transaction

In order to establish subject matter jurisdiction against the United States, there must be (1) statutory authority vesting a district court with subject matter jurisdiction and (2) a waiver of sovereign immunity. United States v. Williams, 514 U.S. 527 (1995). The burden is on the party bringing the action to establish both elements of subject matter jurisdiction against the United States. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375 (1994). In a civil action for the recovery of taxes or penalties alleged to have been erroneously assessed or collected, subject matter jurisdiction and the waiver of sovereign immunity are conferred by 28 U.S.C. § 1346(a)(1). Williams, 514 U.S. 527 (1995).

Generally, pursuant to the full payment rule set forth by the U.S. Supreme Court in Flora v. United States, 362 U.S. 145 (1960), the taxpayer must pay the full amount of the contested tax or penalty before commencing a suit for refund. Ardalan v. United States, 748 F.2d 1411 (10th Cir. 1984). In two footnotes to its opinion in Flora, however, the Supreme Court set forth an exception to the full payment rule for so-called divisible assessments. Flora, 362 U.S. 145

(1960), n. 37 and n. 38. Specifically, the Court referenced excise taxes in footnotes 37 and 38, and found that excise tax deficiencies "may be divisible into a tax on each transaction or event," and the "full payment rule would probably require no more than payment of a small amount." Id. A divisible tax or penalty has since been described as "one that represents the aggregate of taxes due on multiple transactions," Rocovich v. United States, 933 F.2d 991 (Fed. Cir. 1991), and/or one that is "merely the sum of several independent assessments triggered by separate transactions." Korobkin v. United States, 988 F.2d 975 (9th Cir. 1993).

Courts have subsequently applied the divisible tax rule to penalties that can be divided into constituent parts. See, Steele v. United States, 280 F.2d 89 (8th Cir. 1960)(holding that the trust fund recovery penalty of 26 U.S.C. § 6672 is divisible); and Noske v. United States 911 F.2d 133 (8th Cir. 1990)(analyzing a line of cases which held that the pre-1990 version of 26 U.S.C. § 6700 was divisible). The focus on multiple individual transactions as the linchpin of divisibility stems from the specific language in the Supreme Court's Flora footnotes. Again, the Supreme Court found that full payment of the tax was not required when the tax "may be divisible into a tax on each transaction." In contrast, taxes like income and estate taxes "flow from calculations involving complicated considerations of credits, exemptions, etc. The resulting tax has been influenced by and reflects these considerations. They are not naturally separable ..." Friebele v. United States, 20 F. Supp. 492, (D.C.N.J 1937)

The promoter penalty of 26 U.S.C. § 6707 is divisible because it is calculated based on the aggregate of individual amounts triggered by separate transactions.[2] The plain, unambiguous

---

[2] Plaintiff has not found one case that has addressed the divisibility issue in the context of the section 6707 promoter penalty, but commentators have opined that the penalty should be divisible because they are "a single assessment, composed of the aggregate of amounts

4

language in the Flora footnotes dictates a finding of divisibility, when, as here, the aggregated penalty is divisible into a penalty on individual transactions. The IRS assessed a promoter penalty of $160,232,026 against Mr. Pfaff on September 11, 2011; the assessment followed a "Determination" letter (copy attached as Exhibit 1) that IRS issued to Mr. Pfaff on February 15, 2011. The "Determination" letter included a detailed report/explanation (copy attached as Exhibit 2) of why Mr. Pfaff should be liable for the penalty and how the penalty was calculated. Two spreadsheets (one for so-called FLIP/OPIS penalties and one for so-called BLIPS penalties; copies of both are attached as Exhibit 3) were also included to detail the amount of the penalty attributable to each individual transaction.

      The divisibility of this penalty is apparent from the underlying documents that IRS used to support its assessment; these documents support a finding that the penalty is "divisible into a [penalty] on each transaction or event" as set forth in the Flora footnotes. The spreadsheets (Exhibit 3) detail the rationale for assessment and the calculation of the penalty for each of the 245 individual transactions (61 FLIP/OPIS transactions; and 184 BLIPS transactions) that, in the aggregate, constitute the $160,232,026 penalty. The report/explanation (Exhibit 2) for the assessment similarly focuses on the individual transactions; in fact, the explanation uses the term "transaction" or "transactions" over 200 times. The report/explanation also provides three examples of individual transactions to illustrate how the transactions were analyzed and how the individual penalty amounts were calculated. It is disingenuous for the government to now argue that the penalty is not divisible when the Internal Revenue Service's entire workproduct, after an

---

calculated for each individual shelter or investor." Susan Sample and Samira Salman, Tax Shelter Penalties: Are they divisible? Or does the taxpayer have to pay the full balance before litigating? Houston Business and Tax Law Journal 447 (2004).

almost eight year investigation, focuses on the individual transactions that, in the aggregate, make up the total penalty assessed against Mr. Pfaff.

The necessity of focusing on the individual transactions is required by the statute and the accompanying Treasury Regulations. The amount of the promoter penalty is the greater of 1% of the aggregate amount invested in such tax shelter or $500. 26 U.S.C. § 6707. Where interests are sold to investors (as in the present case), the aggregate amount invested in the tax shelter includes all cash, the fair market value of all property contributed and the principal amount of all indebtedness received in exchange for interests in the investment. Treas. Reg. § 301.6707-1T, Q&A-1. The Treasury Regulations further define the "aggregate amount invested" as the "aggregate amount to be received from the sale of interests in the investment." Id., and Treas. Reg. § 301.6111-1T, Q&A-21. Therefore, the accompanying regulations issued by the Department of the Treasury to interpret how the statutory penalty is calculated contemplates the sale of multiple "interests" and provides that the penalty is based on the aggregate of the amount to be received from these individual sales. Id. In this case, the aggregate amount invested, and therefore the amount of each separable penalty, varied from transaction to transaction. See Exhibits 2 and 3. The IRS spreadsheets (copies attached as Exhibit 3) set forth the separate (per transaction) investment amounts, and the penalty report (Exhibit 2) explains the penalty calculation for one FLIP/OPIS penalty and one BLIPS penalty. As required by the Treasury Regulations, these separate amounts are then aggregated (as set forth in the IRS spreadsheets) to determine the amount of the penalty.

In arguing that the promoter penalty is not divisible, the government ignores the independent, separate transactions and erroneously relies on the fact that the penalty is based on

a single event – the failure to register a particular shelter. (Motion to Dismiss; page 11). First, as explained above, the Internal Revenue Service has provided detailed information and workpapers to the contrary; this penalty was calculated based on separate sales/transactions to/of the individual customers. See Exhibits 2 and 3. Second, the focus on a single event – the failure to register – is misplaced. There is no basis in Flora or in footnotes 37 and 38 for the interpretation that the underlying act or failure to act should be determinative of the divisibility question.

      The error of the government's reliance on a single event to determine divisibility is illustrated by an analysis of the so-called trust fund recovery penalty of 26 U.S.C. § 6672. The trust fund recovery penalty is assessed against persons who willfully fail to pay over income and Social Security taxes withheld from employees' wages. Id. Courts have universally held, and the government acknowledges, that the penalty is a divisible penalty because it is an accumulation of "separable assessments for each of the employees involved." Fidelity Bank, N.A. v. United States, 616 F.2d 1181 (10th Cir. 1980); Boynton v. United States, 566 F.2d 50 (9th Cir. 1977). Liability for the trust fund recovery penalty is similarly based on a single event – the taxpayer's willful failure to pay over withholding taxes. Despite the fact that liability is based on this single event, the trust fund recovery penalty is a divisible penalty because it is an aggregate of withheld tax (income and Social Security) from all the employees' wages. The penalty can be divided into the withheld tax for each individual employee, and again, divisibility is based on the fact that the penalty can be divided into constituent parts. Boynton, 566 F.2d 50 (9th Cir. 1977). Similarly, the singular act of failing to register has no impact on the divisibility of the promoter penalty; divisibility is based on the fact that the penalty is an aggregate of the penalty amounts on each individual transaction.

The government also relies on caselaw analyzing divisibility in the context of another promoter penalty, pursuant to 26 U.S.C. § 6700, "to illuminate the difference between a divisible penalty, like § 6700, and a non-divisible penalty, like § 6707." (Motion to Dismiss, page 9). Again, that reliance is misplaced. "Courts have consistently recognized that section 6700 penalties are divisible when they are a cumulation of per transaction penalties." Humphrey v. United States, 854 F.Supp.2d 1301 (N.D. Ga. 2011)(reviewing multiple decisions on the divisibility of the pre-1990 version of the section 6700 penalty). As explained above, the statute and accompanying regulations of section 6707 contemplate a penalty that is based on multiple sales or transactions. In analyzing the post-1990 version of the section 6700 penalty, the court in Humphrey held that the penalty was a "function of a single sale, and a grand penalty assessment that is a cumulation of multiple sales is always separable into single sales. It is this divisible nature of section 6700 penalty assessments that renders them divisible." Id.

Following the same rationale, the section 6707 penalty assessed against Mr. Pfaff is clearly an aggregation of multiple sales, and as such, it is separable into single sales or transactions. Again, the statute and accompanying Treasury Regulations point to the sale of multiple interests to determine the amount of penalty. This aggregation of multiple sales is the linchpin of divisibility. Treas. Reg. § 301.6707-1T, Q&A-1; Treas. Reg. § 301.6111-1T, Q&A-21. Furthermore, for purposes of the registration requirement of 26 U.S.C. § 6111, the definition of a "tax shelter" includes, among other requirements, that the investment be a "substantial investment" and a "substantial investment" is one in which the aggregate amount which may be offered for sale exceeds $250,000, and there are "expected to be 5 or more investors." 26 U.S.C. § 6111(c)(1). With the requirement that there be at least 5 investors, the penalty cannot

be assessed unless there are multiple (at least five) transactions. In this case, the IRS has asserted that there were a total of 245 transactions (61 FLIP/OPIS and 181 BLIPS) that are the basis for the $160,232,026 penalty assessed against Mr. Pfaff. This aggregate penalty is divisible into those 245 individual transactions making the penalty divisible pursuant to the exception set forth in Flora; and therby, conferring to this Court subject matter jurisdiction in this case.

      B. Mr. Pfaff would be deprived of his property without due process of law, in violation of the Fifth Amendment to the United States Constitution if denied the possibility of any post-collection judicial review (by requiring full payment of a multi-million dollar assessment),

The Fifth Amendment to the United States Constitution provides that a person shall not be "deprived of life, liberty or property without due process of law." The right of the United States to collect taxes by summary administrative proceedings has long been settled. Cheatham v. United States, 92 U.S. 85 (1875); Springer v. United States, 102 U.S. 586 (1880). Where adequate opportunity is afforded for a later determination of the legal rights, summary proceedings to secure prompt performance of pecuniary obligations to the government have been consistently sustained. Phillips v. Commissioner of Internal Revenue, 283 U.S. 589 (1931)(citing Cheatham, 92 U.S. 85 (1875), and Springer, 102 U.S. 586 (1880)).

Justice Brandeis stated in Phillips that "[w]here only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for the ultimate judicial determination of the liability is adequate. Phillips, 283 U.S. 589 (1931)(citing Springer, 102 U.S. 586 (1880). Justice Brandeis continued,

> "[t]he procedure provided in [the Internal Revenue Code] satisfies the requirements of due process because two alternative methods of eventual judicial review are available to the [taxpayer]. He may contest his liability by bringing an action, either against the United States or the collector, to recover the amount paid. This remedy is available where the [taxpayer] voluntarily pays the tax and is thereafter denied administrative relief. ... Or the transferee may avail himself of

9

>     the provisions for immediate redetermination of the liability by the Board of Tax Appeals [now the Tax Court] ...."

Neither of these two methods of judicial review is available to Mr. Pfaff if he is required to make full payment of a $160,232,026 promoter penalty liability prior to filing a lawsuit in federal district court. The promoter penalty is an assessable penalty, meaning that the deficiency procedures of 26 U.S.C. § 6211 through 26 U.S.C. § 6215 (describing the procedures for pre-assessment, pre-payment judicial review in the United States Tax Court) are not available to taxpayers. Therefore, one of the two methods cited by Justice Brandeis to ensure constitutional due process is statutorily unavailable to Mr. Pfaff. Indeed, in establishing the full payment rule in Flora, the Supreme Court relied on the fact that taxpayers had the option of appealing the "deficiency to the Tax Court without paying a cent" and therefore, would not be subjected to a great hardship. Flora, 362 U.S. 145 (1960).

The second method (cited by Justice Brandeis) to ensure due process is similarly unavailable if Mr. Pfaff is required to make full payment of a $160,232,026 penalty to obtain his day in court. The amount of the penalty dwarfs any compensation that Mr. Pfaff ever received from his involvement with FLIP, OPIS and BLIPS transactions at issue in this case, and/or his current or past net worth. In fact, there may be only a handful of taxpayers in the United States that would have the ability to make full payment of a tax/penalty liability of this amount; this is not "adequate" opportunity for ultimate judicial review. Furthermore, the government was well aware of Mr. Pfaff's financial constraints given that he provided detailed financial statements prior to being sentenced after his criminal convictions. The government subsequently assessed a penalty that is, as set forth in the Complaint, erroneously calculated and based on inconsistent positions, but their assessment is unassailable and safe from judicial review if full payment is

required to litigate.[3] Given their position that full payment is required, the government has incentive to take outrageous positions, determine an egregiously inflated penalty, and feel safe that their position cannot be challenged. That is what they have done here, and that action does not withstand due process scrutiny.

Given that Mr. Pfaff has no access to the deficiency procedures in the United States Tax Court, the requirement of full payment for federal district court review would negate any opportunity for judicial review. Without any "adequate" opportunity for judicial review, Mr. Pfaff would be denied his property without due process of law in violation of the Fifth Amendment of the United States Constitution.

C. After properly allocating the payments from other jointly and severally liable co-promoters, the penalty assessed against Mr. Pfaff is already paid in full thereby satisfying the full payment rule of Flora.

The promoter penalty of 26 U.S.C. § 6707 is a joint and several liability, meaning that all co-promoters are each liable for the full amount of the penalty, but the Internal Revenue Service is limited to collect the full amount of the penalty only once. Treas. Reg. § 301.6707-1T. Although the statute does not specifically provide for joint and several liability, the Treasury Regulation construes the statute in that manner, and the Internal Revenue Service is bound by its own valid regulations. Helvering v. R.J. Reynolds Tobacco Co., 306 U.S. 110 (1939). According to public settlement documents, the United States (through the Department of Justice and the Internal Revenue Service) has already collected more than $295,688,802 from other co-promoters (set forth below) of the various transactions at issue in this case. Mr. Pfaff contends,

---

[3] The Complaint and the (incorporated by reference) administrative refund claim set forth the inconsistent positions taken by the government to determine that (1) the tax shelter ratio is satisfied (thereby creating a registration requirement), and then (2) to inflate the amount of the penalty to reach a level that is impossible to pay.

11

as set forth in the administrative refund claim incorporated into his Complaint, that the promoter penalty assessed against him on September 11, 2011 has already been paid in full as a result of these payments, rendering the above divisibility and due process arguments moot.

There are at least four substantial payments (totaling $295,688,802) that have already been made by alleged co-promoters of the FLIP, OPIS and BLIPS transactions involved in this case. There are apparently other significant payments attributable to these transactions that have not been disclosed to the public. (See Ex. 1, Schroder Declaration to Motion to Dismiss).

KPMG, one of the co-promoters of the BLIPS, OPIS, and FLIP transactions at issue here, agreed to pay $100,000,000 "to settle the IRS's promoter penalty examination." The settlement occurred on August 26, 2005. A copy of the deferred prosecution agreement and statement of facts are attached as Exhibit 4. The transactions for which the Section 6707 penalty was assessed include BLIPS, OPIS, FLIP, and SOS. Furthermore, the statement of facts supporting the deferred prosecution agreement provides that most of the tax losses and fees generated (over 80%) were attributable to the FLIP, OPIS and BLIPS transactions that were the basis for the assessment against Mr. Pfaff. Accordingly, almost all of the $100,000,000 KPMG payment should have been allocated to those transactions.

Deutsche Bank, another one of the other co-promoters of the FLIP, OPIS, and BLIPS transactions at issue in this case, paid a promoter penalty of $149,839,000 for its involvement in the promotion of various transactions during the years at issue. A copy of the Deutsche Bank AG Non-Prosecution Agreement is attached as Exhibit 5. While the government has not provided any financial details of the promoter penalty paid by Deutsche Bank, the FLIP, OPIS, and BLIPS transactions involved both fees and tax losses that dwarfed the other transactions in

12

which Deutsche Bank was involved. Therefore, a large percentage of Deutsche Bank's Section 6707 penalty should similarly be applied to the FLIP, OPIS, and BLIPS transactions.

Sidley Austin Brown & Wood ("Brown & Wood"), through its predecessor firm, Brown & Wood, issued "more likely than not" opinion letters for various transactions, including BLIPS, FLIP, and OPIS, which were implemented by KPMG and other promoters. Brown & Wood reported to the United States Senate's Permanent Subcommittee on Investigations that the firm wrote 62 opinion letters for FLIP, 72 opinions for OPIS, and 180 opinions for BLIPS. "The Role of Professional Firms in the U.S. Tax Shelter Industry," p. 105, Permanent Subcommittee on Investigations, United States Senate (2005). Brown & Wood settled its promoter penalty case on May 23, 2007, and paid a promoter penalty of $39,400,000. (See Exhibit 6: Department of Justice News Release May 23, 2007 and accompanying Statement of Sidley Austin, LLP).

Finally, German Bank Bayerische Hypo- und Vereinsbank AG ("HVB") paid $29,635,125 in fines and penalties relating to various transactions as part of a deferred prosecution agreement, $6,449,802 of which was to settle the IRS's civil penalty examination. (See Exhibit 7: copy of HVB Deferred Prosecution Agreement, p. 2-3). HVB participated in BLIPS, CARDS, 357(c), and Common Trust Fund transactions. Id. at 7. As the Deferred Prosecution Agreement from the February 13, 2006 settlement provides no guidance as to how the penalty settlement amount was broken down between the various transactions in which HVB participated, it is not possible to determine the amount of the Section 6707 penalty HVB paid for BLIPS transactions. Again, however, the relative size of the BLIPS transactions suggests that an overwhelming portion of the $6,449,802 Section 6707 penalty should be applied to the BLIPS transactions at issue in this case.

The United States has already collected $295,688,802 from KPMG, Deutsche Bank, Brown & Wood, and HVB in settlement of the Service's civil penalty examinations. According to the Declaration of Robert K. Schroder, additional payments and/or credits have further reduced Mr. Pfaff's liability. Again, according to Mr. Schroder's declaration, the IRS has reduced Mr. Pfaff's penalty for failing to register the FLIP/OPIS transactions from $1,397,574 in 1997, $17,824,803 in 1998 and $5,522,649 in 1999; to $252,594 in 1997, $1,343,741 in 1998, and $2,815 in 1999. While IRS has reduced the total penalty attributable to the FLIP/OPIS transactions by approximately $23,000,000 and that reduction is approximately 93% of the original penalty amount, the United States provides no foundation for the allocation that was made and no way to verify the accuracy of their unilateral allocation. On its face, the allocation of other payments does not appear accurate; the penalty has been reduced by a different percentage in different years. The penalty in the 1997 year was reduced/adjusted by approximately 82%; the penalty in the 1998 year was reduced/adjusted by approximately 93%; and the penalty in the 1999 year was reduced by over 99%. There may be a good reason for these differences, but again, the government has not provided any evidence to establish the accuracy of its factual claims.

Given the uncontroverted evidence that the United States has collected approximately $300,000,000 attributable to the FLIP/OPIS and BLIPS transactions at issue in this case, Mr. Pfaff respectfully suggests that limited discovery and/or an evidentiary hearing may be necessary to determine whether the promoter penalty has been paid in full. Mr. Pfaff has repeatedly requested IRS to provide information about how these substantial payments have been allocated, but the government has consistently cited disclosure rules to avoid sharing any details of how

these payments were allocated. (See Exhibit 8: copies of letters from Merriam Law Firm to IRS dated October 6, 2010; March 11, 2011; April 24, 2012; and May 8, 2012).

The IRS is generally prohibited from the disclosure of "tax returns" or "return information" pursuant to 26 U.S.C. § 6103. Under that statutory section, "return information" includes the amount of payments made by a taxpayer. 26 U.S.C. § 6103(b)(2). Mr. Pfaff is not interested in the amount of payments; that information has already been disclosed by the IRS/Department of Justice in the settlements discussed above. Rather, the necessary information is whether IRS properly allocated these payments to the various transactions at issue in this case. Absent this information, the only reasonable factual conclusion is that Mr. Pfaff's promoter penalty liability attributable to the FLIP/OPIS transactions has been paid in full by the substantial payments made by KPMG, Deutsche Bank, Brown & Wood, and HVB (and others). With a finding that the promoter penalty has been paid in full, subject matter jurisdiction would be conferred pursuant to the full payment rule in Flora, discussed above.

DATED this 17th day of June, 2015.

Respectfully Submitted,

s/ Ted H. Merriam
Ted H. Merriam

s/ Kevin A. Planegger
Kevin Planegger

Merriam Law Firm
1625 Broadway, Suite 770
Denver, CO 80202
303-592-5404
303-592-5439 (facsimile)
Attorneys for Plaintiff

15